**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                                                         **Case No. 3:10cr30/MCR**

**ROBERT E. BOURLIER and
VICTORIA BOURLIER, also known
as KAREN VICTORIA RITCHEY,**

      **Defendants.**

_____/

## ORDER

      Pending before the court is Defendant Robert Bourlier's motion in limine to exclude evidence of Florida Board of Medicine Department of Health ("DOH") case no. 2001-03422; and DOH case no. 2003-07279 regarding Dr. Bourlier's medical license.[1]  Also pending is the defendant's motion in limine to exclude expert profile testimony (doc. 176); and the Government's relevancy objection to the testimony of the defense expert, Dr. Billy Weinstein, on the issue of a mental disease or defect bearing on the issue of guilt, *see* Fed. R. Crim. P. 12.2(b).  Having heard the arguments of the parties at the pretrial conference, and upon review of their supplemental filings and relevant case law, the court issues the following rulings:

      1.      Defendant's motion in limine to exclude Rule 404(b) evidence of the 2001 and 2003 Florida Board of Medicine DOH cases regarding Dr. Bourlier's medical license (doc. 175) is **DENIED**.  The evidence arguably shows that the defendant had notice that his prescribing practices were outside the course of usual professional practice, and thus it is relevant to the knowledge element of the charges under the Controlled Substances Act. *See United States v. Alerre*, 430 F.3d 681, 691 (4th Cir.  2005) (noting evidence that a

---

[1]  The court ruled on other matters related to this motion in Order Doc. No. 238, at 2 n.1.

Case No. 3:10cr30/MCR

physician's performance has consistently departed from accepted professional standards supports the proposition that the physician was not practicing medicine, but was instead cloaking drug deals under the guise of a professional medical practice."), *cert. denied* 547 U.S. 1113 (2006); *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1144 (4th Cir. 1994) ("If he was warned and did not heed the warning, the testimony was relevant to establish criminal intent and method of operation and was admissible."); *see also United States v. Prejean*, 429 F. Supp.2d 782, 791 (E.D. La. 2006) (ruling a state board of nursing consent judgment was admissible). It is also relevant to prove that Bourlier acted willfully with regard to the Medicare fraud counts. Furthermore, the probative value is not outweighed by the prejudicial effect because the evidence is necessary to the Government's ability to counter Bourlier's disclosed intention to demonstrate a lack of knowledge and intent. *See* Fed. R. Evid. 403. Any danger of unfair prejudice from this evidence can be eliminated through an appropriate cautionary instruction, which will be given to the jury.[2]

      2.      Defendant's motion in limine to exclude expert "profile" testimony (doc. 176) is deferred until trial. Expert testimony is admissible on an ultimate issue to be decided by the trier of fact as long as it does not include an opinion on whether the defendant did or did not have the mental state constituting an element of the crime charged. *See* Fed. R. Evid. 704. But expert testimony must not "state[] a legal standard or draw[] a leal conclusion." *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006), *cert. denied*, 550 U.S. 936 (2007). Criminal profiles are helpful to law enforcement identifying potential criminals but the Eleventh Circuit has criticized use of criminal profiles as substantive evidence. *See United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983). In an unpublished case, the Eleventh Circuit approved the following rule:

> Experts may testify regarding the modus operandi of a certain category of criminals where those criminals' behavior is not ordinarily familiar to the average layperson, as in the case of the modus operandi of persons involved

---

[2] Defense counsel suggested that allowing this evidence would create a need for him to dispute the accuracy and validity of the DOH complaint and consent decree. At this time, the court is not convinced that there is too great a risk of this issue devolving into a mini-trial because the issue is important only to demonstrate Bourlier's knowledge; whether it was substantively justified is not at issue. However, Bourlier, of course, will be entitled to offer his explanation for the cases at trial, if he chooses.

in illegal drug trafficking or prostitution. Still, there is a line that expert witnesses may not cross. What is proscribed is questioning that produces responses suggesting some special knowledge of the defendant's mental processes. This line relates to the limits of Rule 704(b) on opinion evidence regarding the ultimate issue.

*United States v. Kalaycioglu*, 210 Fed.Appx. 825, 831 (11th Cir. 2006) (unpublished) (internal marks and citation omitted), *cert. denied.*, 552 U.S. 811 (2007).  As the court stated, it is key that the witness not indicate special knowledge of the defendant's mental processes through this evidence. *See id.*

Defendant argues that Dr. Parran's testimony is inadmissible because his opinion involves a criminal standard or will be unduly prejudicial if presented in terms that indicate Bourlier fits the "profile" of a doctor acting unlawfully.  The Government has represented in a supplemental filing that it does not intend to ask Dr. Parran to reference DEA "red flags" or to delineate what law enforcement looks for to determine whether conduct is unlawful.  The Government states it will elicit expert medical testimony from Dr. Parran, inquiring into his review of the medical files based on his medical training and experience, and eliciting his opinion regarding whether the prescriptions were dispensed or distributed outside the normal course of professional practice and not for a legitimate medical purpose. There has been no proffer of Dr. Parran's testimony, however, so the court cannot evaluate its precise content prior to trial.  The court will hear either a proffer or live testimony outside the presence of the jury before ruling on this motion definitively.

3.     The court overrules the Government's relevancy objection to the testimony of Dr. Billy Weinstein.  Defendant provided Rule 12.2(b) notice of an intent to present expert evidence of a mental disease or defect or other mental condition bearing on guilt through Dr. Weinstein's testimony that Bourlier suffers from multiple sclerosis, which allegedly affects his cognitive abilities.  The court recognizes that the dangers inherent in this type of evidence are great; the Eleventh Circuit has cautioned trial courts to evaluate such evidence "outside the presence of the jury."  *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990); *see also Clark v. Arizona*, 548 U.S. 735, 775 (2006) (holding the state was justified in excluding mental-disease evidence based on its potential to mislead

Case No. 3:10cr30/MCR

jurors by suggesting "a defendant suffering from such a recognized mental disease lacks cognitive, moral, volitional, or other capacity when that may or may not be a sound conclusion at all").  For this reason, the court heard Dr. Weinstein's testimony at the pretrial conference held on April 25, 2011.  After considering the testimony, the court concludes that this is the rare case where this testimony is admissible.  The Medicare fraud counts charge willful conduct and the controlled substances counts charge knowing conduct "outside the usual course of professional practice" and not for "a legitimate medical purpose."  The proposed testimony is relevant to negate specific intent for the Medicare fraud counts and to negate knowledge and intent for purposes of the controlled substances charges because, according to the medical testimony, the diagnosis of multiple sclerosis bears on Dr. Bourlier's cognitive functioning at the time of the offenses alleged in the indictment.  Although Dr. Weinstein did not treat Bourlier during the relevant time period as charged in the indictment, his testimony, if believed, indicates that the disease was affecting Bourlier's cognitive abilities in 2004 based on medical records from that time period.  Specifically, he testified that a discharge summary from 2004 reported cognitive deficits similar to those noted by Dr. Weinstein in 2010; the relevant time frame of the indictment is 2005 through 2008.  Dr. Weinstein explained that the disease is progressive and that the cognitive deficits resulting from this disease affect Bourlier's ability to organize and document records accurately, and may have impaired his ability to appreciate the need to properly document or the consequences of failing to do so.  He also opined that the multiple sclerosis impacts Bourlier's memory, his attention, his ability to process information, and may have resulted in fragmented thinking.  The court agrees with the defendant that this testimony is relevant to his defense.

     **DONE and ORDERED** this 30th day of April, 2011.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:10cr30/MCR